UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.:

VE

        Plaintiff,

vs.

NINE EAST 71ST STREET, CORPORATION,
FINANCIAL TRUST COMPANY, INC.,
NES, LLC,
        Defendant.
_____/

## **COMPLAINT**

Plaintiff, VE, by and through her undersigned counsel, for her claims against Defendants, alleges as follows:

1.     The controversy in this cause of action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. Therefore, jurisdiction is proper under 28 U.S.C. section 1332.

2.     Plaintiff files this Complaint under a pseudonym in order to protect her identity because this Complaint makes allegations of a sensitive sexual nature the disclosure of which, in association with her name, would cause further harm to her.

3.     Plaintiff is currently a resident of and domiciled in the state of Florida.

4.     At all times material to this cause of action, Jeffrey Epstein travelled between and stayed regularly in multiple residences, including in New York, New York (within the Southern District of New York) and the United States Virgin

Islands.   He was a citizen of the United States and a resident of the U.S. Virgin Islands.

5.      At all times material to this cause of action Jeffrey Epstein was an adult male born in 1953, who died on August 10, 2019.

6.      At all times material hereto, Defendant Nine East 71st Street, Corporation was a domestic business corporation conducting business in New York, with its principal place of business located at 575 Lexington Avenue, Fourth Floor, New York, NY 10022.

7.      At all times material hereto, Defendant Financial Trust Company, Inc. was a U.S. Virgin Islands corporation conducting business in New York.

8.      At all times material hereto, Defendant NES, LLC, was and is a domestic limited liability company registered in and conducting business in New York.

9.      Corporate Defendants NES, LLC; Financial Trust Company, Inc; Nine East 71st Street, referred to as "Defendants," each performed substantial business in New York.

10.      Plaintiff intends to amend this complaint to add or substitute additional parties as discovery reveals the identities of other negligent corporate or individual actors.   In that regard, through information and belief, the Estate of Jeffrey Epstein

has not been properly established although if and when it is, Plaintiff intends to amend to add the Estate as a party.

11.     Jeffrey Epstein was an officer, director, or employee of many corporate entities registered in various states throughout the United States, any one of which may also bear legal responsibility for the crimes he committed against young females, including minors such as Plaintiff.

12.     Additionally, individuals who worked at the residences where he committed sexual violations, as well as others who assisted him in committing such violations, were employed through, or worked for, numerous other corporate entities whose negligence likely caused or contributed to the sexual violations that caused harm to Plaintiff.

13.      The complete universe of those individuals and companies whose negligence contributed to the crimes committed by Epstein are currently unknown.

14.     As Plaintiff learns through discovery the identities of additional individual or corporate entities and the manner in which those others caused or contributed to causing harm to Plaintiff through negligence, Plaintiff intends to amend to add those parties as well.  Should discovery reveal that any of the currently named Defendants are not the proper identity of the Companies identified as current Defendants, substitution of parties shall be requested to ensure accuracy and correctness of pleading.

15.     A substantial part of the acts, events, and omissions giving rise to this cause of action occurred in the Southern District of New York; venue is proper in this District.  28 U.S.C. section 1391(b)(2).

16.     At all times material to this cause of action, Jeffrey Epstein and Defendants owed a duty to Plaintiff to treat her in a non-negligent manner and not to commit or conspire to commit intentional, criminal, fraudulent, or tortious acts against her, including any acts that would cause Plaintiff to be harmed through conduct committed against her in violation of New York Penal Law section 214-G, New York Penal Law section 130.20; or New York Penal Law 130.66; or New York Penal Law 130.67; or New York Penal Law 130.52.

## FACTUAL ALLEGATIONS

17.     At all times material to this cause of action, Jeffrey Epstein was an adult male over 45 years old.  Epstein was tremendously wealthy, widely recognized as a billionaire, who used his wealth, power, resources, and connections to commit illegal sexual crimes in violation of federal and state statutes and to employ and conspire with other individuals and corporate entities to assist him in committing those crimes or torts or to facilitate or enable those acts to occur.

18.     Epstein displayed his enormous wealth, power, and influence to his employees; to the employees of the corporate or company entities who worked at his

direction; to the victims procured for sexual purposes; and to the public, in order to advance and carry out and conceal his crimes and torts.

19.     At all relevant times, Epstein had access to numerous mansions, a fleet of airplanes, motor vehicles, boats and one or more helicopters.  For example, he regularly traveled by private jet aboard a Boeing aircraft (of make and model B-727-31H with tail number N908JE) or a Gulfstream aircraft (of make and model G-1159B with tail number N909JE).

20.     Jeffrey Epstein also travelled between and frequently inhabited and travelled between numerous properties and homes, including a Manhattan townhome located at 9 East 71st Street, New York, NY 10021 valued conservatively by Jeffrey Epstein's own admission at $55,931,000.00; a ranch located at 49 Zorro Ranch Road, Stanley, New Mexico 87056 valued conservatively by Jeffrey Epstein's own admission at $17,246,208.00; a home located at 358 El Brillo Way, Palm Beach, Florida 33480 valued conservatively by Jeffrey Epstein's own admission at $12,380,209.00; an apartment located at 22 Avenue Foch, Paris, France 75116 valued conservatively by Jeffrey Epstein's own admission at $8,672,820.00; an Island located at Great St. James Island No. 6A USVI 00802 (parcels A, B, C); and an Island Little St. James Island No. 6B USVI 00802 (A, B, C).  *See* Jeffrey Epstein "Asset Summary – June 30, 2019" filed in Case 1:19-cr-00490-RMB on July 15, 2019 attached hereto as **Exhibit A.**

21.     Jeffrey Epstein was otherwise affiliated with the corporations that owned or controlled each of the real property listed in the preceding paragraph.

22.     The allegations herein primarily concern Jeffrey Epstein's conduct while at his townhouse in New York and concern the various corporate entities which provided the opportunity for his illicit conduct to occur and remain concealed for years.

23.     Epstein had a compulsive sexual preference for young females as young as 14 years old.

24.     Epstein enjoyed sexual contact with young females, including minor children, and took pleasure corrupting vulnerable young females, including minor children, into engaging in sexual acts with him.

25.     Epstein directed a complex system of individuals, including employees and associates of Defendant entities, to work in concert and at his direction, for the purpose of harming teenage girls through sexual exploitation.

26.     It was widely known among individuals regularly in Epstein's presence that he got pleasure out of corrupting vulnerable young females into engaging in uncomfortable and unwanted sexual acts for his own gratification.

27.     On July 2, 2019, the United States Attorney's Office for the Southern District of New York filed a Sealed Two Count Indictment inclusive of One Count of Sex Trafficking Conspiracy and One Count of Sex Trafficking, in part due to

Epstein's criminal activities against children in the New York Mansion located at 9 East 71st Street.

28.     On July 8, 2019, Jeffrey Epstein was arrested pursuant to the aforementioned Indictment, which is attached hereto as **Exhibit B**.

29.     The Indictment stated in part, and Plaintiff herein adopts as true, that "from at least in or about 2002, up to and including least in or about 2005, Jeffrey Epstein, the defendant, enticed and recruited, and caused to be enticed and recruited, minor girls to visit his mansion in Manhattan, New York (the "New York Residence") and his estate in Palm Beach, Florida (the "Palm Beach Residence") to engage in sex acts with him, after which the victims were given hundreds of dollars in cash." Criminal Indictment at 1.

30.     "Moreover, and in order to maintain and increase his supply of victims, Epstein also paid certain of his victims to recruit additional girls to be similarly abused by EPSTEIN.  In this way, EPSTEIN created a vast network of underage victims for him to sexually exploit in locations including New York and Palm Beach." Criminal Indictment at 1-2.

31.     "The victims described herein were as young as 14 years old at the time they were abused by Jeffrey Epstein, and were, for various reasons, often particularly vulnerable to exploitation.  Epstein intentionally sought out minors and knew that

many of his victims were in fact under the age of 18, including because, in some instances, minor victims expressly told him their age." Criminal Indictment at 2.

32.     "In creating and maintaining this network of minor victims in multiple states to sexually abuse and exploit, JEFFREY EPSTEIN, … worked and conspired with others, including employees and associates who facilitated his conduct by, among other things, contacting victims and scheduling their sexual encounters with EPSTEIN at the New York Residence and at the Palm Beach Residence." Criminal Indictment at 2.

33.     The indictment further explained, and Plaintiff adopts and alleges, that, "[v]ictims were initially recruited to provide 'massages' to Epstein, which would be performed nude or partially nude, would become increasingly sexual in nature, and would typically include one or more sex acts." Criminal Indictment at 3.

34.     "Between at least in or about 2002 and in or about 2005, Epstein abused numerous minor victims at the New York Residence by causing these victims to be recruited to engage in paid sex acts with him." Criminal Indictment at 3.

35.     Defendants enabled Jeffrey Epstein to receive near daily massages from young females, often minors, who were not experienced in massage. Rather than receive regular body massages, Epstein was predictably sexually abusing the young females in violation of New York Penal Law Section 130.

36.     Additionally, employees of the various Defendant corporations performed actions or inactions that further placed victims, including Plaintiff, in danger of being sexually abused by Epstein, and assisted in the concealment of his sexually abusive acts.

37.     Defendants employed many recruiters of young females. The nature of the Jeffrey Epstein's sex trafficking venture and enterprise enabled victims themselves to elevate their status to that of a paid recruiter of other victims, an elevation only made possible through the negligence of Defendants.

38.     Recruiters were taught by employees of Defendants to inform targeted victims that Epstein possessed extraordinary wealth, power, resources, and influence; that he was a philanthropist who would help female victims advance their careers and lives; and that she only needed to provide Epstein with body massages in order to avail receive his assistance and influence.

39.     The collaboration from Defendants and the many employees fulfilled Epstein's compulsive need for sex with young females by preying on their personal, psychological, financial, and related vulnerabilities. Defendants' tactics included promising the victims money, shelter, transportation, gifts, employment, admission into educational institutions, educational tuition, protection, and other things of value in exchange for sex and concealment of Jeffrey Epstein's actions.

40.     Jeffrey Epstein's sexual attraction to young, often underage, females, dated back to at least the mid-nineties and the number of victims increased substantially with the necessary assistance from Defendants and Defendants' employees.

41.     Defendants, at the direction of Epstein or in furtherance of his demands, and with help from assistants, associates and underlings, and even other victims, recruited or procured dozens if not hundreds of young females, including minors, for the purpose of Epstein's sexual gratification.

42.     Jeffrey Epstein, and consequently Defendants, specifically targeted underprivileged, emotionally vulnerable and/or economically disadvantaged young females to sexually molest and abuse.

43.     Additionally, Defendants through employees, informed young females that Jeffrey Epstein was wealthy, well-connected, and could either advance or destroy the career or education of any young female brought to provide Jeffrey Epstein a massage, depending on her degree of cooperation.

**VE**

44.     Minor victim VE was subjected to the types of illegal sexual acts detailed in the Criminal Indictment filed against Jeffrey Epstein by the Southern District of New York.

45.     Jeffrey Epstein committed abhorrent acts of sexual abuse against Plaintiff in 2001 when she was only sixteen years old.

46.     In or about 2001, Plaintiff was recruited by another minor child to go to Jeffrey Epstein's mansion in Manhattan, New York to provide him with a "massage."

47.     The minor child who recruited Plaintiff ("Plaintiff's friend") informed Plaintiff that she would be paid $300 to provide a massage to a man in Manhattan.

48.     Plaintiff was a minor female with no experience or training in massage.

49.     She was recruited under the false pretense that she would be providing a legitimate body massage at the mansion owned or controlled by Defendant, Nine East.

50.     In or about the Fall of 2001, Plaintiff's friend brought Plaintiff to Jeffrey Epstein's home to provide him with a massage.

51.     Upon arrival to the mansion, the two minor children were escorted inside by an employee of Defendant NES, LLC and taken to Jeffrey Epstein's massage room.

52.     Plaintiff's friend entered the massage room and left Plaintiff outside the door.

53.     Moments later, Plaintiff's friend exited the room and instructed Plaintiff to enter the room alone.

54.     Plaintiff walked into the dark room which contained a massage table, various massage oils, and numerous photographs of nude girls.

55.     Unsure of what to expect, Plaintiff waited for the man to arrive for his massage.

56.     Jeffrey Epstein entered the room and immediately removed his clothing before positioning himself on the massage table.

57.     Jeffrey Epstein then provided Plaintiff with instruction on how to massage his body.

58.     Jeffrey Epstein quickly turned the massage into a sexual encounter with the then sixteen-year-old Plaintiff.

59.     During the sexual encounter, Plaintiff told Jeffrey Epstein that she did not feel comfortable.  Jeffrey Epstein ignored her and continued to engage in the improper and illegal sexual contact until he was finished.

60.     The sexual encounter ended when Jeffrey Epstein masturbated to climax.

61.     Plaintiff was paid $300 cash before being escorted out of his mansion, all with assistance from Defendants; this payment was made to induce Plaintiff to conceal the activities of Epstein and to entice her to return.

62.     Plaintiff observed the opulence of the mansion owned by Defendant, Nine East, and the organization of Defendant, NES, Inc., which collectively

facilitated her further cooperation with Jeffrey Epstein, culminating in New York Penal Law Section 130 crimes being committed against her by Jeffrey Epstein.

63.     Within days, Plaintiff returned to Jeffrey Epstein's mansion wherein she endured yet another sexual assault, this time more severe.

64.     Plaintiff was taken by elevator to the floor where Jeffrey Epstein's massage room was located.

65.     Similar to the first time, Jeffrey Epstein appeared wearing only a towel and laid face down on the massage table.  Within minutes, he again turned the massage into a sexual encounter against the 16-year-old plaintiff.  He instructed her to take her clothes off this time.

66.     During the second encounter, in addition to harmful, forcible, physical touching and sexual exploitation of Plaintiff, Jeffrey Epstein forcibly used a sex toy on Plaintiff, forcibly pressing it onto and in Plaintiff's vagina.

67.     Jeffrey Epstein then commanded Plaintiff to straddle him.  Knowing that she had no way out of the Mansion, she complied with Jeffrey Epstein's orders.

68.     Jeffrey Epstein moved plaintiff's panties aside and attempted to insert his penis into her vagina, briefly penetrating her, while Plaintiff was resisting.

69.     During this encounter, Epstein digitally penetrated Plaintiff. The encounter ended with Jeffrey Epstein masturbating to climax.

70.     Throughout the duration of the sexual encounter, Plaintiff found herself trapped in Jeffrey Epstein's large mansion under the impression that there was no feasible or safe means of escape.

71.     All sexual acts were performed by Jeffrey Epstein intentionally and for no legitimate purpose and for his own gratification when Plaintiff was a minor child less than seventeen years of age.

72.     The intentional acts of Jeffrey Epstein against Plaintiff constitute a sexual offense as defined in New York Penal Law § 130.

73.     Pursuant to New York Penal Law § 130.05, a person is deemed incapable of consent when she is less than seventeen years old.

74.     Jeffrey Epstein committed sexual misconduct against Plaintiff as defined in §130.20 of the New York Penal Law, inasmuch as Jeffrey Epstein engaged in sexual intercourse with Plaintiff without Plaintiff's consent.

75.     Jeffrey Epstein committed a forcible touching against Plaintiff as defined in §130.52 of the New York Penal Law, inasmuch as Jeffrey Epstein, intentionally and for no legitimate purpose, engaged the forcible sexual touching of Plaintiff for the purpose of degrading or abusing her or for the purpose of gratifying his sexual desire.

76.     Jeffrey Epstein committed an aggravated sexual abuse in the third degree against her as defined in §130.66 of the New York Penal Law, inasmuch as

Jeffrey Epstein inserted a foreign object into the vagina of Plaintiff by forcible compulsion.

77.     Jeffrey Epstein committed an aggravated sexual abuse in the second degree against her as defined in §130.67 of the New York Penal Law, inasmuch as Jeffrey Epstein caused physical injury to Plaintiff when he inserted a finger into the vagina of Plaintiff by forcible compulsion.

**COUNT I**
**NEGLIGENT SECURITY AGAINST**
**NINE EAST 71st STREET, CORPORATION**

78.     The Plaintiff adopts and realleges paragraphs 1 through 77 above.

79.     At all times material hereto, Defendant, Nine East 71st Street, Corporation (hereinafter "Nine East"), was the lawful owner of the property located at 9 East 71st Street, New York, New York, 10021.

80.     Defendant, Nine East, acquired title to the property on September 6, 1989 and retained such title until the property was transferred to Maple, Inc. on December 11, 2011.

81.     At all such times, Defendant Nine East maintained legal control over the subject premises.

82.     Jeffrey Epstein was a regular habitant of Defendant Nine East and in fact resided at the premises when he was present in New York.

83.     Defendant knew or should have known when Defendant was in the home owned by Defendant Nine East when Epstein had young females, including minor females such as Plaintiff.

84.     When Plaintiff was sexually abused by Jeffrey Epstein in 2001, Defendant, Nine East, as the owner of the property where all of the sexual abuse occurred, had a non-delegable duty to maintain the premises in a reasonably safe condition.

85.     Defendant's non-delegable duty additionally included the duty to take precautions to protect guests, visitors, or invitees from foreseeable harm, including foreseeable criminal conduct.

86.     Defendant's non-delegable duty further included the duty to take reasonable precautionary measures to minimize the risk of criminal acts upon visitors.

87.     Most important, Defendant had a duty to take protective measures when it could be shown that the company possessing, owning, or controlling the property, knew or had reason to know from past experience that there was a likelihood of conduct that would endanger a visitor.

88.     To establish foreseeability, the criminal conduct at issue must be reasonably predictable based on the prior occurrence of the same or similar criminal activity at a location sufficiently proximate to the subject location.

89.     No conduct becomes more foreseeable or predictable than the criminal conduct of Jeffrey Epstein, in which he engaged regularly, if not daily, when he was in Defendant's property.

90.     Nearly every day that Jeffery Epstein was on or in the property of Defendant Nine East, he was engaging in criminal sexual behavior in violation of New York Penal Code Section 130.

91.     Defendant knew or should have known of Jeffrey Epstein's propensity for sexually abusing minor children, including regularly on the premises.

92.     Defendant knew of should have known from past experience that there was a high likelihood that Jeffrey Epstein would engage in foreseeable criminal conduct that was likely to seriously endanger or injure a visitor, including Plaintiff.

93.     Defendant breached its duty to Plaintiff by failing to take even minimal safety precautions to protect against the predictable criminal acts of Jeffrey Epstein, which were reasonably predictable and foreseeable to occur on the property.

94.     Defendant's negligence was a proximate cause of the sexual offenses committed against Plaintiff in violation of Article 130 of the NY Penal Law.

95.     As a direct and proximate result of Defendant's breach, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a

loss of her capacity to enjoy life, as well as other damages.  Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses.  These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment against Nine East 71st Street, Corporation for compensatory and general damages, attorney's fees, punitive damages and such other and further relief as this Court deems just and proper. Plaintiff hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT II
## NEGLIGENCE AGAINST
## FINANCIAL TRUST COMPANY, INCORPORATED

96.     The Plaintiff adopts and realleges paragraphs 1 through 77 above.

97.     At all times material hereto, Financial Trust Company, Inc. (hereinafter "Financial Trust") was a U.S. Virgin Islands corporation conducting business in New York.

98.     At all times material hereto, Defendant, Financial Trust, employed Jeffrey Epstein.

99.     Defendant, Financial Trust, had a duty to exercise reasonable care to refrain from retaining in its employ a person with known dangerous propensities in a position that would present a foreseeable risk of harm to others.

100.     Defendant Financial Trust operated in part to satisfy the personal needs of Jeffrey Epstein, which included daily massages which Epstein requires to be sexual in nature.

101.     Jeffrey Epstein's requirement that he receive regular massages from untrained young females caused Defendant and its employees to knowingly turn a blind eye to the dangerous sexual addictive propensities of Jeffrey Epstein, despite knowledge that he would cause harm to many young females including Plaintiff, in order to retain its most valuable employee—Jeffrey Epstein.

102.     Defendant Financial Trust operated in part to further Jeffrey Epstein's goal to obtain, recruit, and procure young females for the purposes of providing sexually explicit massages to Jeffrey Epstein.

103.     During the course and scope of his employment for Defendant, Jeffrey Epstein did fulfill the corporate objective of receiving sexual massages procured for him by employees of Defendant.

104.     Jeffrey Epstein was notorious for converting each massage into a sexually exploitive activity in violation of New York Penal Law Section 130, a fact which was known or should have been known in the exercise of reasonable care by Defendant.

105.     Even though Defendant, Financial Trust, knew of Jeffrey Epstein's propensity for the sort of behavior that caused Plaintiff's harm and Jeffrey Epstein's

constant engagement in this type of criminal behavior during the course and scope of his employment, Defendant retained Jeffrey Epstein and failed to properly supervise him.

106.    Jeffrey Epstein did not have a set work schedule or office but instead conducted business on behalf of the corporation from various locations all over the world.

107.    While conducting said business, Jeffrey Epstein was frequently using corporate finances in furtherance of his sexually explicit behavior.

108.    Upon information and belief, at times other employees of the Defendant corporation were coordinating these sexually explicit massages for Epstein to engage in during business hours, while he was within the course and scope of his employment for Defendant.

109.    In fact, while Jeffrey Epstein was conducting business telephone calls or authorizing company actions on behalf of Defendant, Financial Trust, he would frequently be receiving a sexually explicit massage.

110.    In certain circumstances, sexually explicit massages provided by young women, oftentimes minor children, who were untrained in the art of massage, were coordinated by another employee of Defendant who knew or should have known that the massage was being conducted by an underage girl for the exclusive purpose of committing sexual crimes against her.

111.    Jeffrey Epstein engaged in this type of sexually abusive behavior on a daily basis to the extent that engaging in sexual massages became the most regular activity that he engaged in while in the course and scope of his employment.

112.    Jeffrey Epstein's habitual routine of recruiting and engaging in sexually explicit massages began many years before the formation of Defendant and was not a lifestyle unknown to Defendant, Financial Trust.

113.    Defendant, Financial Trust, knew or in the exercise of reasonable care should have known that Jeffrey Epstein was potentially dangerous, had engaged in a pattern of criminal sexual behavior against young females, including minors, for years prior to the formation of Defendant Financial Trust, and that he was not going to cease committing criminal sexual acts.

114.    Jeffrey Epstein was retained with knowledge of the propensity of this sort of behavior.

115.    Defendant, Financial Trust, retained Jeffrey Epstein with knowledge that he would in fact injure others, such as Plaintiff, during the course and scope of his employment.

116.    Despite such knowledge, Financial Trust knowingly placed Jeffrey Epstein in a position to cause foreseeable harm, which could have been prevented had Defendant taken reasonable care in making decisions regarding the retention and supervision of Jeffrey Epstein.

117.    Defendant's negligence was a proximate cause of the sexual offenses committed against Plaintiff in violation of Article 130 of the NY Penal Law.

118.    As a direct and proximate result of Defendant's negligence, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment against Financial Trust Company, Inc. for compensatory and general damages, attorney's fees, punitive damages and such other and further relief as this Court deems just and proper. Plaintiff hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT III
## NEGLIGENCE AGAINST NES, LLC

119.    The Plaintiff adopts and realleges paragraphs 1 through 77 above.

120.    It is believed that each employee of Defendant, NES, operated at the direction of Jeffrey Epstein.

121.    Upon information and belief, the primary responsibility of each employee of Defendant, NES, LLC ("NES") was to fulfill the needs or requests of Jeffrey Epstein; more particularly, his daily massage schedule.

122.    Upon information and belief, the employees of Defendant, NES, were compensated to primarily, if not exclusively, procure or maintain each young female masseuse, or to assist, knowingly or unknowingly, in the concealment of any misconduct committed against each masseuse.

123.    Upon information and belief, the employment responsibilities of the various employees of Defendant, NES, included but were not limited to: 1) recruiting young females, including minor children such as Plaintiff, to provide massages, 2) creating Jeffrey Epstein's massage schedule, 3) maintaining Jeffrey Epstein's massage schedule, 4) escorting various young females into the massage room at the New York mansion owned by Defendant Nine East, 5) maintaining contact with the various young females who were recruited to the New York mansion for the purposes of providing Jeffrey Epstein with a massage, 6) providing compensation to each young masseuse upon the completion of her engagement with Jeffrey Epstein, 7) providing meals and food and other services to the young females in order to provide an air of legitimacy to the functions of the corporation, 8) providing hospitality services to the young females in order to provide an air of legitimacy to the functions of the corporation, 9) providing educational services, 10) providing

medical services, 11) providing transportation services, 12) providing housing services, 13) providing various other enticements to ensure the continued cooperation of the various young female masseuse with Defendant NES's corporate objective, 14) encouraging individuals, including the females who were recruited to the house to provide a massage to recruit other young females to engage in the same activity for Jeffrey Epstein, and 15) coordinating together and with Jeffrey Epstein to convey a powerful and legitimate enterprise system capable of gaining cooperation from young females recruited for massage, often minors such as Plaintiff.

124.     In fulfilling their employment responsibilities, each employee voluntarily assumed a duty with respect to each young female recruited to massage Jeffrey Epstein, including Plaintiff.

125.     To fulfill said duty, each employee was required to perform their assumed duty carefully without omitting to do what an ordinarily prudent person would do in accomplishing the task.

126.     The young females being recruited to engage in massages for Jeffrey Epstein were inexperienced in the art of massage, a fact that was known or should have been known to Defendant NES and its employees in the exercise of reasonable care.

127.    Plaintiff relied on Defendant NES's voluntary assumption of a duty as well as the voluntary assumption of each individual employee to act with reasonable care towards her.

128.    In the exercise of reasonable care, Defendant and its employees further knew or should have known of the dangerous propensities of Jeffrey Epstein and the proximate harm that would be caused by his likely sexual misconduct and various violations of New York Penal Law Section 130.

129.    The failure of Defendant NES and each of its respective employees to act in the same manner as an ordinarily prudent person, placed Plaintiff in a more vulnerable position than if Defendant and its employees had not assumed the obligation to treat her with reasonable care.

130.    In breaching its Duty, NES launched a force or instrument of harm directed toward Plaintiff.  In doing so, Defendant, NES, enhanced the risk Plaintiff faced and caused her to forego any opportunity she may otherwise have had to avoid the risk inherent with being in a room alone with Jeffrey Epstein to perform a massage as an untrained minor child.

131.    Defendant's negligence was a proximate cause of the sexual offenses committed against Plaintiff in violation of Article 130 of the NY Penal Law.

132.    As a direct and proximate result of Defendant's negligence, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain,

emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment against NES, Inc, for compensatory and general damages, attorney's fees, punitive damages and such other and further relief as this Court deems just and proper. Plaintiff hereby demands trial by jury on all issues triable as of right by a jury.

Dated: August 14, 2019.

Respectfully Submitted,
EDWARDS POTTINGER, LLC
By: */s/ J. Stanley Pottinger*
J. Stanley Pottinger
1930 Broadway, Suite 12 B
New York, NY 10023
(917)-446-4641
Fax: (954)-524-2822
Email: ecf@epllc.com

Bradley J. Edwards
Brittany N. Henderson
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
(954)-524-2820
Fax: (954)-524-2822
Email: brad@epllc.com
        brittany@epllc.com
(*SEEKING ADMISSION PRO HAC VICE*)